**MINPECO, S.A., Plaintiff,**

**v.**

**CONTICOMMODITY SERVICES, INC.,
et al., Defendants.**

**Ronald GORDON, et al., Plaintiffs,**

**v.**

**Nelson Bunker HUNT, et al.,
Defendants.**

**Philip KORWEK, et al., Plaintiffs,**

**v.**

**Nelson Bunker HUNT, et al.,
Defendants.**

**Nos. 81 Civ. 7619 (MEL), 82 Civ. 1318
(MEL), and 84 Civ. 7934 (MEL).**

United States District Court,
S.D. New York.

Feb. 20, 1987.

LASKER, District Judge.

At an early stage of the proceedings in these cases various parties moved for orders protecting the confidentiality of information which might be secured in the course of discovery. The primary motive for requesting such relief was to assure that information secured in the discovery process would not, at least without court approval, be made available to third parties who had claims outside of these cases against parties to this litigation. A further consideration of equal importance was the desirability of granting confidentiality to the testimony or papers of non-party witnesses. On July 22, 1983 the court heard argument on the motions for a protective order. Central to the discussion was the concern of various defendants that plaintiffs be barred from transmitting to any governmental agency material discovered to the plaintiffs. The defendants' concern was prompted in particular by the fact that the Commodities Futures Trading Commission ("CFTC") was contemporaneously conducting an investigation as to whether any defendant in these cases had violated any provision of law in the course of buying and selling silver or silver futures, actions which are also the subject of this litigation.

On July 26, 1983 a protective order was entered in these cases which provides at Paragraph (1)(i)

(i) No information, documents or things produced in this action by defendants, whether or not designated as confidential pursuant to the terms of this order, may be disclosed by any party or counsel for any party to any federal, state or other government commission, board, bureau, agency, department or instrumentality without prior approval of the court which shall be requested on reasonable notice to all parties.

On February 28, 1985 the CFTC filed an administrative complaint alleging that six individuals and three corporations, acting singly and in concert, had manipulated the prices of silver and silver futures during late 1979 and early 1980. (*In the matter of Nelson B. Hunt, et al., v. CFTC*, Docket No. 85–12). The complaint names as respondents, among others, Nelson Bunker Hunt, William H. Hunt, Nadji R. Nahas, International Metals Investment Company, Ltd., Norton Waltuch, Advicorp Advisory and Financial Corp., S.P.A., and ContiCommodity Services, Inc., each of whom is a

defendant in one or more of the cases captioned above.

On October 10, 1986 Administrative Law Judge Arthur L. Shipe, who presided over the proceedings pending before the CTFC on October 10, 1986, issued a subpoena duces tecum directed to Minpeco, S.A. ("Minpeco") calling for the production of a) documents referring to or reflecting statements made by respondents and other specified persons concerning silver transactions and b) documents that relate to, refer to, or reflect meetings or communications among or between the respondents and other specified persons.

Upon receipt of the subpoena, counsel for Minpeco took the position that, because of the provisions of Paragraph 1(i) of the protective order of July 26, 1983 set out above, Minpeco was unable to comply with the subpoena without leave of this court. Upon Minpeco's refusal to comply with the subpoena the CFTC moved to intervene in these cases "for the limited purpose of seeking leave, and to seek leave for Minpeco to comply with the subpoena."

The CFTC's motion to intervene is granted. Its motion to seek leave for an order compelling the plaintiff to comply with the subpoena is denied.

The law in this Circuit covering applications by a government agency to modify a valid protective order is most fully and authoritatively set out in *Martindell v. ITT*, 594 F.2d 291 (2d Cir.1979). In *Martindell* the United States sought access to transcripts of pre-trial civil depositions taken pursuant to a court-approved stipulation of confidentiality. The District Court denied the application and the Court of Appeals affirmed observing that:

[The] vital function of a protective order issued under Rule 26(c), F.R. Civ.P., ... is 'to secure the just, speedy and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our adminis-tration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. 594 F.2d at 295.

The court concluded that:

After balancing the interests at stake, we are satisfied that, absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge. *Id.* at 296 (footnote omitted).

*Martindell* is still good law. *Palmieri v. State of N.Y.*, 779 F.2d 861 (2d Cir.1985). Other decisions in this district and circuit applying the *Martindell* rule or approach are: *H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551 (S.D.N.Y.1985), aff'd, 797 F.2d 85 (2d Cir. 1986); *GAF Corp. v. Eastman Kodak Corp.*, 415 F.Supp. 129 (S.D.N.Y.1976); and *Data Digests, Inc. v. Standard and Poor's Corp.*, 57 F.R.D. 42 (S.D.N.Y.1972).

In the case at hand the CFTC has failed to meet its burden of showing "some extraordinary circumstance or compelling need" for the information which it seeks on the present motion. The Commission has pursued its own investigation in this matter for more than six years and has procured the production of many thousands of documents and taken the deposition of many witnesses including 24 whose statements it seeks to obtain through this subpoena.[1] It

---

**1.** Affidavit of Roderic G. Steakley In Opposition   To The Motion sworn to November 3, 1986,

therefore seems reasonable to conclude that by its subpoena the Commission seeks to obtain documents and testimony which, as the *Martindell* court commented, "might be useful in appraising the credibility, accuracy and completeness of testimony given by witnesses in the government's investigation or might provide additional information of use to the Government." 594 F.2d at 293. Yet *Martindell* holds that the objective of seeking material for such purposes does not constitute an "extraordinary circumstance" or "compelling need" such as to justify modifications of a valid protective order.

 Even aside from the failure of the Commission to establish extraordinary circumstances or a compelling need, however, there are reasons why the motion for enforcement of the subpoena should be denied. During the 3½ years in which the protective order has been in force in these cases numbers of non-parties have been deposed or provided documents on assurance of the confidentiality of their testimony or of the material which they furnished. Those persons have a right to be protected against becoming victims of litigation cross-fire. Moreover, one of the prime purposes of the 1983 order, to protect defendants from undue pressure which might be brought by the plaintiffs transmitting data to the CFTC, remains. That threat is not, as the Commission contends, diminished by the fact that its investigation has concluded and has ripened into an official complaint. Indeed, it could be argued that since the complaint has formally issued, the threat of possible undue pressure has become greater.

Finally, it should be noted that the discovery in the hands of the plaintiffs is necessarily selective in nature. The depositions which have been conducted by the plaintiffs are biased in plaintiffs' favor, in the sense that any plaintiff would naturally seek to ask questions the answers to which would be favorable to the questioner. Not only is the material sought necessarily selective but in some instances it also contains materials relating to matters in which one or more of the defendants have not been represented by counsel. For these reasons the delivery of such material to the CFTC would be unfair and would promote the very danger which the protective order sought to minimize: undue pressure on the defendants by cooperation between the plaintiff and a governmental agency.

The motion to intervene is granted. The motion to enforce the subpoena is denied.

It is so ordered.