MINPECO S.A., Ronald Gordon, Philip and Dorothy Korwek, Marty Finkelstein, William L. Cohn and James G. Williams, Plaintiffs,

v.

CONTICOMMODITY SERVICES, INC., Conticapital Management Inc., Conticapital Limited, Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, International Metals Investment Co., Ltd., Sheik Mohammed Aboud Al–Amoudi, Sheik Ali Bin Mussalem, Naji Robert Nahas, Gilion Financial, Inc., ACLI International Commodity Services, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation S.A., Mahmoud Fustok, Merrill Lynch Pierce Fenner & Smith Inc., Bache Halsey Stuart Shields, Inc., E.F. Hutton & Company, Inc., Commodity Exchange, Inc., the Board of Trade of the City of Chicago, Continental Grain Company, Inc., Walter Goldschmidt, Faisal Ben Abdullah, Al Saoud, Bache Group, Inc., (Prudential Bache Securities Inc.), Melvin Schnell, Litardex Traders, S.A. John Does Nos. 1 Through 15, Donaldson, Lufkin & Jenrette ACLI Futures Inc., f/k/a ACLI International Commodity Services, Inc., Defendants.

Nelson Bunker HUNT, William Herbert Hunt, Lamar Hunt, and Banque Populaire Suisse, Defendants–Appellees,

v.

COMMODITY FUTURES TRADING COMMISSION, Intervenor–Appellant.

No. 181, Docket 87–6108.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1987.

Decided Nov. 2, 1987.

Charles D. Stodghill, Commodity Futures Trading Com'n, Washington, D.C. (Marshall E. Hanbury, Virginia F. Crisman, Helen G. Blechman, Steven H. Meyer, Robert F. Klein, Commodity Futures Trading Com'n, of counsel), for intervenor-appellant.

Maris Veidemanis, New York City (Paul J. Curran, Michael Malina, Aaron Rubinstein, Kaye, Scholer, Fierman, Hays & Handler, New York City, Robert E. Wolin, Gardere & Wynne, Dallas, Tex., of counsel), for defendants-appellees.

Before PRATT and MAHONEY, Circuit Judges, and BRIGHT, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

This case represents merely a single plot line in an ongoing soap opera, "As The Hunts Turn". Its central characters are the three brothers Hunt, Nelson Bunker, William Herbert, and Lamar. The overall drama is even now being played out in far-flung courts and administrative hearing rooms, and pits the Hunts against various adversaries determined to take them to task for events in 1979 and 1980, when the Hunts allegedly attempted to corner the silver market and reap enormous profits thereby. Like any good soap opera, particularly a legal one, the story has unfolded slowly.

Today's episode involves an attempt by the Commodity Futures Trading Commission ("CFTC") to obtain modification of a protective order entered by the district court. The CFTC seeks to take advantage of discovery that has thus far taken place in the underlying civil suit brought by the plaintiffs, who are not a party to this appeal, against the Hunts and various other defendants. The district court ruled that the CFTC was required to show a "compelling need" to justify modification of the protective order, and further that the CFTC had failed to meet this burden. Because we conclude that the district court

applied the correct standard, and that its application of that standard to the showing made by the CFTC was not an abuse of discretion, we affirm.

## BACKGROUND

For purposes of the limited issues presented by this appeal, it is not necessary to understand the entire civil suit being prosecuted against the Hunts. It is enough to know that on July 27, 1983, the district court entered a protective order covering the fruits of the action's discovery. With respect to the government, the scope of the protective order was both clear and broad; it provided:

No information, documents or things produced in this action by defendants, whether or not designated as confidential pursuant to the terms of this order, may be disclosed by any party or counsel for any party to any federal, state or other government commission * * * without prior approval of the court which shall be requested on reasonable notice to all parties.

On February 28, 1985, the CFTC began an administrative enforcement action against the Hunts and several other co-defendants, including many of the same defendants to this civil action, charging that they had manipulated silver prices upward in violation of the Commodity Exchange Act.

On October 10, 1986, the administrative law judge presiding over the CFTC's action issued a subpoena duces tecum to Minpeco, the plaintiff in the underlying civil suit here, requiring production of documents covered by the district court's protective order. Minpeco declined to produce the documents, citing the prohibitions in the protective order. The CFTC then sought to intervene in this action solely for the purpose of modifying the protective order. On February 20, 1987, the district court granted intervention, but denied the CFTC's motion to modify the protective order. *See Minpeco, S.A. v. ContiCommodity Services, Inc.*, 653 F.Supp. 957 (S.D.N.Y.1987). This appeal followed.

## DISCUSSION

A. *Appealability of the District Court Order.*

■ As a preliminary matter, the Hunts contend that the order of the district court denying the CFTC's motion to modify the protective order is interlocutory and therefore not appealable. They rely on *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir.1986), for the proposition that orders denying motions to modify protective orders for discovery purposes are not appealable under 28 U.S.C. § 1291.

We conclude, however, that *Hayden* is inapposite to this case. There, we held that the district court did not abuse its discretion in denying a motion by the State of New York to intervene in order to make a motion to modify a protective order. In *dicta* we went on to state that even if we were to grant the state's motion to intervene on appeal, we would nevertheless hold that the district court's order denying the *plaintiffs'* motion to modify the protective order was not appealable, on the basis that "the order denying modification did not dispose of the entire controversy in the district court". *Id.* at 89.

Here, however, it was not plaintiff's motion to modify the protective order that was denied; it was the CFTC's. The entire controversy between the CFTC and the defendants in this case was disposed of by the district court's denial of the government's motion to modify the protective order. Had the district court in *Hayden* granted the state's motion to intervene, and proceeded then to deny its motion for modification of the protective order, that denial would have been appealable under *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 293–94 (2d Cir.1979) ("If the Government had sought and obtained * * * interven[tion] in the action pursuant to Rule 24(d), F.R.Civ.P., for the limited purposes of seeking modification of the protective order, the district court['s] * * * resulting decision would be final as to the intervenor within the meaning of Title 28 U.S.C. § 1291, it being the only

pending matter in the action."). More recently, in *In re New York Times*, 828 F.2d 110, 113 (2d Cir.1987), we held that an order maintaining a seal on motion papers was appealable by the newspaper which had intervened in an ongoing criminal case solely to seek disclosure. We also noted there that, as the CFTC could have done here, the New York *Times* could simply have filed a separate civil suit, rather than intervened, and in that event the district court's order unquestionably would have been appealable. We adopt the same approach to appealability here, refusing to exalt form over substance by forcing the parties to go through an additional procedural step that would produce precisely the same result.

The district court's order would in any event be appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The district court's order was "separable from, and collateral to" the underlying action, and would be effectively unreviewable on final judgment in the civil action, since the CFTC seeks the material for immediate use in its administrative action. *Id.* at 546, 69 S.Ct. at 1225–26. *See also In re Application of National Broadcasting Co., Inc.*, 635 F.2d 945, 949 n. 2 (2d Cir.1980) ("*Cohen* very likely applies" to allow appeal where television network intervened in criminal case to gain access to videotape evidence). We therefore hold that the order is appealable.

### B. *Modification of the Protective Order.*

█ The central question on the merits of the district court's decision not to modify its protective order is whether Judge Lasker applied the correct standard in requiring the CFTC to show a "compelling need" to justify modification. We hold that he did.

Under *Martindell*, 594 F.2d at 296, "absent a showing of improvidence in the grant of a * * * protective order or some extraordinary circumstance or compelling need, * * * a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government * * * *". Moreover, in *Martindell*, the government sought the material covered by the protective order for use in a pending criminal investigation; the governmental interest at stake there was therefore greater than that involved here, where the CFTC seeks modification of the protective order to aid it in its ongoing administrative action.

As Judge Mansfield wrote in *Martindell*, 594 F.2d at 295, "the vital function of a protective order * * * is to 'secure the just, speedy, and inexpensive determination' of civil disputes * * * by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." A consequence of reducing the reliability of protective orders would be the "undermining [of] a procedural system that has been successfully developed over the years for disposition of civil differences." *Id.* While this concern for the needs of the civil litigation system is not absolute, *Martindell* establishes that in balancing the need of the government for access to discovery materials against the continued integrity of the protective order, the government must show a "compelling need" to overcome the systemic needs reflected in the protective order.

The CFTC points to *United States v. GAF Corp.*, 596 F.2d 10 (2d Cir.1979), as establishing a less demanding test. The short answer to the CFTC's reliance on *GAF* is that it arose not in an attempt to enforce a subpoena, but in the context of a civil investigative demand ("CID") issued by the department of justice pursuant to the Antitrust Civil Process Act, 15 U.S.C. § 1311 *et seq.* As amended by the Hart–Scott–Rodino Antitrust Improvements Act of 1976, the CID statute "expanded the Justice Department's authority to issue CID's for information relevant to the investigation of possible antitrust violations." *GAF*, 596 F.2d at 12. The government acted in *GAF* pursuant to a broad, but specific, grant of statutory authority to investigate in a particular area. *Id.* at 16 n. 9 ("Any partial continuation against the Government of the protective order should be predicated upon a particular showing of the need for protection of specific materi-

als, so that the statutory power we have upheld will not be defeated by a too narrow application in the particular case.").

More important, the court in *GAF* did not decide the issue of the appropriate burden to be placed on the government to obtain modification of a protective order. Rather, the court held only that the CID did allow the government to *seek* disclosure of documents from the party that had obtained it via discovery. While so holding, the court nevertheless left open the question of what effect the protective order should have on the ultimate decision of whether and to what extent to disclose the fruits of discovery in a given case, except to say that where a CID is involved some "particular showing" of need for protection is required. As we noted in *GAF*, "The existence of an outstanding protective order is not *in itself* fatal to the Government's effort to obtain the documents. Such orders are subject to modification to meet the reasonable requirements of parties in other litigation". *Id.* at 16 (emphasis added).

Saying that the protective order does not automatically foreclose government access to documents does not answer the question of what showing must be made by the government in order to justify such disclosure. Outside the context of a CID, *Martindell*, not *GAF*, answers that question. *See also Palmieri v. State of New York*, 779 F.2d 861, 864 (2d Cir.1985) (remanding to district court for application of *Martindell* standard to state request for access to a sealed settlement agreement between parties to a civil antitrust action); *Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir.1982) (affirming refusal of district court, applying *Martindell* standard, to modify protective order where federal agency is a party and intervenor seeks access to documents under FOIA). It seems clear that the "compelling need" standard has been consistently and uniformly followed in this circuit, and we decline the CFTC's invitation to depart from this well-travelled road.

The district court's application of the *Martindell* standard requires little comment. The CFTC concedes that it has already obtained voluminous discovery in its ongoing administrative action. *See Minpeco*, 653 F.Supp. at 959. Indeed, the primary purpose of the CFTC in seeking modification of the protective order is to compare the fruits of plaintiffs' discovery here with the results of its own investigation, in order to evaluate compliance with its own subpoenas and ascertain the truth of much of what it has independently discovered. While these are certainly permissible goals for the CFTC, they do not rise to the level of a "compelling need" under *Martindell*.

Moreover, one of the primary reasons the protective order was originally entered was to prevent plaintiffs from using the threat of turning over their discovery to the government in order to coerce a settlement. *Id.* at 960. This potential, as well as the reliance on the protective order by nonparties who have been deposed or produced documents, further supports continued enforcement of the order. Given the awesome powers of investigation already available to the CFTC, we conclude that the district court did not abuse its discretion in determining that the commission had not met its burden.

The order of the district court is affirmed.