In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION.

Master File No. 1:00–1898.
MDL No. 1358 (SAS).
No. M21–88.

United States District Court,
S.D. New York.

Signed Sept. 3, 2014.

---

Robin Greenwald, Esq., Robert Gordon, Esq., Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Peter John Sacripanti, Esq., James A. Pardo, Esq., McDermott Will & Emery LLP, New York, NY, for Defendants.

Michael Axline, Esq., Miller & Axline P.C., Sacramento, CA, for Plaintiffs.

Joel G. MacMull, Esq., Goetz Fitzpatrick LLP, New York, NY, Robert J. Cunningham, Jr., Esq., Allison R. Mullins, Esq., Rees Broome P.C., Tysons Corner, VA, for EPL.

Donald H. Chase, Esq., Morrison Cohen LLP, New York, NY, Scott E. Bayzle, Esq., Parker Poe Adams & Bernstein LLP, Raleigh, NC, for Hamner.

## MEMORANDUM OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge:

### I. BACKGROUND

In this consolidated multi-district litigation ("MDL"), Plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, which is a product formed by the natural degradation of MTBE in water. Familiarity with the facts of this case is presumed for the purposes of this Order.

Between 2010 and 2012, non-parties—the Hamner Institute for Health Sciences ("Hamner") and Environmental Pathology Laboratories, Inc. ("EPL.")—produced tens of thousands of documents to Plaintiffs pursuant to a Rule 45 subpoena. The documents were subject to two stipulated protective orders that agreed that these

documents would be treated as confidential. Currently before the Court is Plaintiffs' motion to lift the confidentiality designation for these documents. For the following reasons, Plaintiffs' motion is DENIED.[1]

## A. The Hamner Protective Order

Hamner is a research institution located in Research Triangle Park, North Carolina. In 2005, several gasoline companies, including Chevron, Shell, and ExxonMobil, began funding a study to evaluate the carcinogenic potential of MTBE in drinking water.[2]

In 2010, Plaintiff CVWD issued a third-party subpoena to Hamner seeking production of documents relating to an MTBE study. CVWD also issued a subpoena to depose Darol E. Dodd, a Hamner employee, about the study. Hamner and Dodd moved to quash these subpoenas. On August 18, 2010, this Court ordered Hamner to "produce any raw data from its MTBE study, the final report of the study when completed, and any communications between ExxonMobil and [Hamner] relating to the study."[3] However, Hamner was not required "to turn over its internal communications or work product[.]"[4] The Court ruled that CVWD could depose

Dodd but only after the MTBE study was finalized.[5] Finally, the Court ordered CVWD and Hamner to submit a joint protective order.[6]

On September 29, 2010, Hamner and CVWD agreed to a stipulated protective order ("Hamner Protective Order").[7] Under the protective order,

> Documents ... produced by [ ] Hamner shall be stamped "HAMNER–CONFIDENTIAL" to signify that they are subject to the protection of this Order. [D]eposition transcripts and exhibits ... and oral statements or communications that quote, summarize or contain information from the Documents are subject to the protection of this Order.[8]

The parties further agreed that documents would be de-designated only pursuant to the following procedure:

> (a) If a party reasonably believes that the information produced in this litigation should not have been designated as "Confidential," it must notify counsel for [ ] Hamner, in writing, of the basis for its challenge to the claim ...,
>
> (b) Counsel for [ ] Hamner must respond in writing within ten (10) business days of receipt of said written challenge ...,

---

1. Hamner produced its documents to Crescenta Valley Water District ("CVWD") in *CVWD v. Exxon Mobil Corporation, et al.*, No. 07 Civ. 9453. The EPL produced its documents to the New Jersey Department of Environmental Protection ("NJDEP") plaintiffs in the case of *NJDEP, et al. v. Atlantic Richfield Co., et al.*, No. 08 Civ. 0312. Because the CVWD case was remanded to the Central District of California on June 10, 2011, CVWD is no longer a plaintiff before this Court. As a result, Plaintiffs filed the motion in the NJDEP case—the only active case in which the relevant subpoenas were issued. This Order, however, impacts all cases in this MDL because the terms of both protective orders apply to all MDL cases.

2. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 269 F.R.D. 360, 363 (S.D.N.Y.2010).

3. *Id.* at 365.

4. *Id.*

5. *See id.* at 365–66.

6. *See id.* at 366.

7. *See* Hamner Protective Order, Ex. A to the Declaration of Scott E. Bayzle ("Bayzle Decl."), counsel for Hamner.

8. *Id.* ¶ 3.

(c) Counsel for [plaintiff] and [ ] Hamner shall then promptly confer to attempt to resolve the dispute ...,

(d) If the parties cannot resolve the dispute, the objecting party has ten (10) business days ... to file a written motion with the court objecting to the designation ...,

(e) The confidentiality designation shall remain in effect unless and until the court rules that the information is not confidential.[9]

Finally, the parties stipulated that "[t]he provisions of [the Hamner Protective] Order [would] terminate ... [w]ithin thirty (30) days after the final conclusion of all aspects of the last MDL 1358 lawsuit."[10]

In 2010, Hamner produced thousands of documents subject to the protective order—including the raw data used for the MTBE study, emails between it and ExxonMobil relating to the study, and the final MTBE report.[11] In 2012, CVWD served a second subpoena on Dodd, directing him to produce certain documents at his deposition.[12] CVWD and Hamner agreed that many of these documents were confidential and thus, subject to the protective order.[13]

### B. The EPL Protective Order

In 2007, Hamner retained EPL, a research company, to develop the MTBE study.[14] On September 6, 2011, Plaintiff NJDEP served a subpoena on EPL.[15] In response, EPL moved to quash on the grounds that the subpoena "requested confidential information" and could subject EPL to "undue burden and expense."[16] On October 27, 2011, before the Court ruled on the motion, the NJDEP and EPL entered into a protective order ("EPL Protective Order").[17] Under the EPL Protective Order,

> Documents ... stamped as 'Confidential' or 'Proprietary' and which are or contain a trade secret or other confidential research, development, or commercial information ... shall be treated as Confidential subject to this Order[.][18]

Like the Hamner Protective Order, the EPL Protective Order requires Plaintiffs to "notify counsel for [the EPL] in writing" if they wish to challenge the claim of confidentiality of any document.[19] The terms of this procedure are virtually the same as those set forth in the Hamner Protective Order.

Finally, the EPL Protective Order stated that it would remain in effect until "thirty (30) Days after the expiration of the last applicable deadline for the last permitted appeal, rehearing, or reconsider-

---

9. *Id.* ¶ 8.

10. *Id.* ¶ 14.

11. *See* Non–Parties Hamner and Dodd's Memorandum in Opposition to Plaintiffs' Motion to Enforce Waiver and Declassification Provisions of Protective Orders ("Hamner Opp.") at 5–6.

12. *See* Amended Deposition Notice of Dodd, Ex. K to the Bayzle Decl.

13. *See* Email Chain Between Tracy O'Reilly, Plaintiffs' counsel, and Bayzle, Ex. M to Bayzle Decl.

14. *See* EPL's Opposition to Plaintiffs' Motion to Enforce Waiver and Declassification Provisions of Protective Orders ("EPL Opp.") at 2.

15. *See id.*

16. *Id.*

17. *See id.*

18. EPL Confidentiality Agreement and Protective Order, Ex. A to the Declaration of Allison R. Mullins ("Mullins Decl."), counsel for EPL, at ¶ II(J).

19. *Id.* ¶ II(K).

ation related to [this MDL]." [20] In November 2011, EPL produced hundred of pages of documents and emails in accordance with the EPL Protective Order.[21]

## II. DISCUSSION

Plaintiffs recognize that they are free to use Hamner and EPL documents in these litigations.[22] Specifically, the Hamner Protective Order states that "the Documents ... shall be used only for preparation and trial in [this] action." [23] Nevertheless, Plaintiffs now ask the Court to de-designate all such documents for the benefit of "the EPA and other regulatory entities." [24]

■ *First,* Plaintiffs lack standing to request a blanket declassification on behalf of the EPA.[25] The EPA already has the MTBE report and has not, to date, requested any documentation from Hamner or the EPL regarding the report.[26] Nor have Plaintiffs submitted an affidavit from the EPA.[27]

■ Plaintiffs respond that they are also "bringing [this] Motion on their own behalf to promote their own governmental interests in protecting the public's health, safety, and welfare." [28] While they may have standing to bring these motions in this capacity, Plaintiffs have failed to show why the Court should disregard the terms of the stipulated protective orders and dissolve them before the conclusion of this MDL.

*Second,* Plaintiffs argue that "because relevant evidence carries a presumption of admissibility, the burden of proof for a Rule 26(c) order rests with [Hamner and EPL]." [29] Plaintiffs insist that Hamner and EPL cannot "overcome their burden to prove that secrecy is necessary." [30] However, Hamner and EPL have produced all relevant documents to Plaintiffs under the terms of the protective orders.[31] Plaintiffs—who have stipulated to both protective orders—bear the burden of

---

**20.** *Id.* ¶ II(J).

**21.** *See* EPL Opp. at 2.

**22.** *See* Plaintiffs' Motion to Enforce Waiver and Declassification Provisions of Protective Orders ("Pl. Mem.") at 3.

**23.** Hamner Protective Order ¶ 12.

**24.** Pl. Mem. at 1.

**25.** *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 563, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that "the party seeking review [must] be [] among the injured" to have standing); *See also* 5/13/14 Conf. Tr., Ex. B to the Mullins Decl., at 42:8–22 (Court: "It's Hamner versus the EPA apparently .... Let the EPA put in an affidavit").

**26.** *See* Declaration of Darol E. Dodd ("Dodd Decl.") ¶ 4 (noting that the Report was provided to the EPA by "one or more of the Study's sponsors").

**27.** *See* Mullins Decl. ¶ 7; Dodd Decl. ¶ 12. To the extent that the EPA needs the documents or data underlying the MTBE study report, it may follow the procedures set forth in the relevant EPA regulations. *See* 40 C.F.R. § 792.1 *et seq.*

**28.** Plaintiffs' Reply Memorandum in Support of Motion to Enforce Waiver and Declassification Provisions in EPL's Protective Order ("Reply Mem. to EPL") at 7.

**29.** Pl. Mem. at 15.

**30.** *Id.* at 14. Plaintiffs rely on *In re Fosamax Products Liability Litigation* to support the contention that Hamner and EPL bear the burden to overcome the "presumption of admissibility." Pl. Mem. at 14–15 (citing *In re Fosamax Prods. Liab. Litig.,* No. 06 Civ. 1687, 2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009)). But *Fosamax* involved a subpoenaed non-party that attempted to avoid discovery altogether. Here, Hamner and EPL produced thousands of documents to Plaintiffs.

**31.** *See* Pl. Mem. at 15.

persuading the Court to dissolve them prematurely.[32]

Here, a blanket declassification by the Court is unwarranted. Plaintiffs have refused to comply with the relevant declassification provisions. Specifically, Plaintiffs agreed to identify the documents at issue and inform Hamner and/or EPL "in writing, of the basis" for their objections to the confidentiality designations.[33]

Both Hamner and EPL remain willing to cooperate with Plaintiffs to the extent that Plaintiffs can identify specific documents that they wish to declassify.[34] Hamner has even identified categories of documents that may no longer need protection.[35] Plaintiffs must meet and confer with Hamner and EPL regarding specific documents that they seek to declassify. Once they do so, they may renew this motion as to specific documents.

## III. CONCLUSION

For the aforementioned reasons, Plaintiffs' motion is DENIED. The Clerk of

the Court is directed to close this motion (Doc. No. 381/4021).[36]

SO ORDERED.

**32.** *See Geller v. Branic Int'l Realty Corp.,* 212 F.3d 734, 738 (2d Cir.2000) (holding that a court should not modify a protective order "[a]bsent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need"); *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.,* 106 F.R.D. 551, 554 (S.D.N.Y.1985) ("[I]f the issuance of a protective order was supported by a showing of good cause, the burden of persuasion is typically placed on the party seeking modification.").

**33.** Hamner Protective Order ¶ 8; EPL Protective Order ¶ II(K). Plaintiffs argue that during the deposition of Dodd and Dr. Gabrielle Willson—an EPL employee—certain documents used as exhibits were "automatically declassif[ied]." Pl. Mem. at 12. Plaintiffs contend that Hamner and EPL were required to "request[] on the record that such docu-

ments be marked confidential." *Id.* But the documents used at the depositions were already marked as confidential both when produced and in the official exhibits provided by the court reporter. *See* Dodd Decl. ¶¶ 11, 15; Mullins Decl. ¶ 6. These documents do not become declassified because they were not marked with a second "confidential" sticker after the deposition. In order to declassify them, Plaintiffs are required to follow the declassification procedures set forth in the protective orders. *See* EPL Protective Order ¶ II(K); Hamner Protective Order ¶ 8.

**34.** *See* EPL Opp. at 8; Hamner Opp. at 9.

**35.** *See* Hamner Opp. at 9–10.

**36.** This Motion is listed as Doc. No. 381 on the 08 Civ. 0312 docket. It is listed as Doc. No. 4021 on the 00 Civ. 1898 docket. The clerk is directed to close both entries.