IN THE MATTER OF THE APPLICATION OF FRANK GONSALVES CORREA TO REGISTER AND CONFIRM TITLE TO LAND SITUATE AT OMA`OPIO 1, 2, 3, AND 4, KULA, MAUI, STATE OF HAWAI'I
WILLIAM S. ELLIS, JR., Petitioner/Respondent-Appellant,
v.
KRS DEVELOPMENT, INC.; KRS ASSOCIATES I, LLC; and KRS ASSOCIATES II, LLC, Respondents/Petitioners-Appellees, and RICHARD EMERY, TRUSTEE, Intervenor-Appellee
No. 28357.
Intermediate Court of Appeals of Hawaii.
September 24, 2009.
On the briefs:
William S. Ellis, Jr. for Petitioner/Respondent-Appellant, pro se.
Wray H. Kondo and David Y. Nakashima for Respondents/Petitioners-Appellees KRS Development, Inc.; KRS Associates I, LLC; and KRS Associates II, LLC.
Lyle S. Hosoda and Raina P. B. Gushiken (Lyle S. Hosoda & Associates) for Intervener-Appellee Richard Emery.

SUMMARY DISPOSITION ORDER
NAKAMURA, C.J., WATANABE, and FUJISE, JJ.
William S. Ellis, Jr. (Ellis) appeals from the final judgments in favor of KRS Development, Inc. (KRS Development); KRS Associates I, LLC (KRS I); and KRS Associates II, LLC (KRS II) (collectively, KRS entities) entered by the Land Court of the State of Hawai'i (land court)[1] on December 12, 2006 in two cases involving real property in Kula, Maui (property). We affirm.

A.
The record indicates that Ellis formerly owned the property in question, but in September 1997, he conveyed all his legal and equitable right, title, and interest in the property to Upland Partners (Upland) for development purposes. In November 1997, creditors forced Upland into involuntary bankruptcy, and on June 27, 2002, the United States Bankruptcy Court for the District of Hawai'i entered an order approving the sale of the property to KRS Development or its nominees. Thereafter, Richard Emery, the court-appointed bankruptcy trustee (Emery), conveyed different portions of the property, free and clear of all liens and encumbrances, to KRS Development or its nominees, KRS I, or KRS II. The cases underlying this appeal stem from Ellis's efforts to prevent the development and sale of the property by the KRS entities and to cloud the title to the property.

1. Case 1
Ellis commenced Case No. 1-LD-03-0001 (Case 1) by filing a petition in the land court on January 7, 2003, seeking to amend land court certificate of title No. 619, 934 to note thereon various notices of pending actions (NOPAs) involving Upland that had been filed in the office of the assistant registrar of the land court as Document Nos 2814252, 2828846 2831317, and 2831706. The petition was accompanied by an order to show cause, signed by the land court judge, requiring KRS II and three others[2] to appear at a hearing on February 10, 2003 and show cause why Ellis's petition should not be granted.
Emery filed an objection to Ellis's petition on January 31, 2003 and a motion to intervene in Case 1 on March 25, 2003. On May 6, 2003, the land court granted Emery's motion to intervene. On September 25, 2003, the land court entered an order granting KRS II's cross-motion for summary judgment, denying Ellis's motion for summary judgment, and dismissing Ellis's petition with prejudice. On December 12, 2006, the land court entered a final judgment in favor of KRS II and against Ellis as to all claims asserted by Ellis in his January 7, 2003 petition. On January 3, 2006, the land court clerk's taxation of costs in favor of KRS II and against Ellis was filed, subject to review by the land court. On January 8, 2007, Ellis filed his notice of appeal from the final judgment. On April 16, 2007, the land court entered an order denying Ellis's motion to disallow costs to KRS II and allowing and taxing costs in favor of KRS II and against Ellis in the amount of $4,652.26.

2. Case 2
In Case No. 1-LD-03-0003 (Case 2), the KRS entities petitioned the land court on April 7, 2003 to (1) expunge various instruments affecting or concerning the property that had been recorded in land court; (2) direct the registrars of the land court and bureau of conveyances "not to record any further instruments submitted for recordation" by Ellis, his officers, agents, servants, employees, or attorneys, and any persons in active concert or participation with any of them (collectively, Ellis's associates) in connection with the property; (3) bar and enjoin Ellis and Ellis's associates from contacting (a) the KRS entities, their officers, agents, servants, or employees, (b) any person or entity purchasing or negotiating with the KRS entities for purchase of the property or portions of the property, and (c) any financial institutions, title companies, escrow companies, or any other entity transacting business relating to the property; and (4) bar and enjoin Ellis and Ellis's associates from taking any action that affected the property or interfered with the KRS entities' ownership and enjoyment of the property. Ellis responded by filing a motion to dismiss the KRS entities' petition or "strike redundant, immaterial, impertinent, and scandalous matter."
On September 9, 2003, the land court issued an order granting in part and denying in part the KRS entities' motion for a temporary restraining order (TRO). The TRO enjoined Ellis and Ellis's associates from (1) contacting the KRS entities and their officers, agents, servants, and employees, except through legal counsel; (2) contacting any owner of the property or portions of the property, including any and all contractors or individuals performing work related to the property, except through legal counsel; and (3) contacting any person or entity purchasing or negotiating with the KRS entities for the purchase of the property or portions thereof, including prospective purchases, except through the KRS entities' legal counsel. The TRO stated that it was to remain in effect pending a hearing on an order to show cause why a preliminary injunction should not be issued.
On September 25, 2003, the land court entered an order denying Ellis's motion to dismiss. On October 21, 2003, the land court entered an order (1) granting the KRS entities' motion for summary judgment and for injunctive relief; (2) ordering the land court registrar to expunge various instruments related to the property that were recorded in the land court; (3) prohibiting Ellis and Ellis's associates from filing or recording any further instruments, including NOPAs, on the land court certificates of title affecting the property; and (4) barring and enjoining Ellis and Ellis's associates from contacting (a) the KRS entities and their officers, agents, servants, and employees, except through licensed legal counsel, (b) any property owner of the property, or their employees, agents or representatives, including any and all contractors or other individuals performing work related to the property, except through legal counsel, and (c) any person or entity purchasing or negotiating with the KRS entities for the acquisition of any interest in the property, including prospective purchasers, except through legal counsel; "provided that, spoken communication shall only be engaged in the presence of [the KRS entities'] legal counsel and all written communication shall also be provided to [the KRS entities'] legal counsel."
On December 12, 2006, the land court entered a final judgment in favor of the KRS entities and against Ellis as to all claims in the KRS entities' petition. The final judgment expressly dismissed any remaining claims with prejudice. On January 3, 2007, the land court clerk's taxation of costs was filed, subject to review by the land court. On January 8, 2007, Ellis filed a notice of appeal from the final judgment in Case 2.
On January 16, 2007, Ellis filed a verified motion to disallow costs. On April 16, 2007, the land court entered an order denying Ellis's motion to disallow costs and allowing and taxing costs in favor of the KRS entities and against Ellis in the amount of $4,288.47.

B.
Ellis asserts on appeal that (1) the land court erred in granting Emery's motion to intervene in Case 1; (2) the TRO and the injunction issued in Case 2 are invalid because (a) the land court lacked jurisdiction to issue them, (b) they violated Ellis's constitutional rights, and (c) the land court abused its discretion in issuing them; and (3) the cost orders in Cases 1 and 2 were an abuse of discretion.

C.
Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the case law and statutes relevant to the arguments advanced and the issues raised by the parties, we disagree with Ellis and conclude as follows.

1.
The land court did not err in granting Emery's motion to intervene in Case 1. Hawai`i Rules of Civil Procedure (HRCP) Rule 24 provides, in relevant part:
INTERVENTION.
(a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
(b) Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute, ordinance or executive order administered by an officer, agency or governmental organization of the State or a county, or upon any regulation, order, requirement or agreement issued or made pursuant to the statute, ordinance or executive order, the officer, agency or governmental organization upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
Four factors are considered in determining whether intervention of right is required under HRCP Rule 24(a) (2):
(1) whether the application was timely; (2) whether the intervener claimed an interest relating to the property or transaction which was the subject of the action; (3) whether the disposition of the action would, as a practical matter, impair or impede the intervener's ability to protect that interest; and (4) whether the intervener's interest was inadequately represented by the existing defendants.
In re Estate of Campbell, 106 Hawai`i 453, 460, 106 P.3d 1096, 1103 (2005). Here, Emery satisfied all four factors for intervention of right in Case 1. First, he timely filed a motion to intervene less than two months after Ellis's petition was filed. Second, as the bankruptcy trustee for the property, Emery clearly had an interest relating to the property that was the subject of the underlying land court action. Third, if, as Ellis requested, the land court allowed the certificates of title for the property to be amended to reflect the NOPAs, Emery would be unable to protect the bankruptcy estate's interest in the property if he were not allowed to intervene. Finally, Emery, as the seller of the property for the bankrupt estate was not in the same position as the KRS entities, which had purchased the property from the bankrupt estate. As the land court explained in its final judgment, Emery "sought to intervene in this case in order to ensure that the facts and issues surrounding the sale of the property to [KRS II] were placed before the [land court] for its proper determination and to ensure that the interest of the estate and its creditors were adequately protected." Therefore, Emery clearly had a right to intervene in Case 1.
Even if Emery did not have a right to intervene in Case 1, we conclude that the land court did not abuse its discretion in permitting Emery to intervene under the broader intervention standards set forth in HRCP Rule 24(b)(2). A "trial court's discretion under Rule 24 (b) (2) is very broad[, and] a denial of permissive intervention has virtually never been reversed." Baehr v. Miike, 80 Hawai'i 341, 345, 910 P. 2d 112, 116 (1996) (citations omitted). The land court noted that both the estate and creditors had an interest in protecting their interests in the property. The land court did not abuse its discretion by allowing Emery to intervene so Emery could assist in protecting the estate and creditors' interests in the property.

2.
Contrary to Ellis's argument, the land court had jurisdiction to grant injunctive relief in Case 2 based on the broad language of Hawaii Revised Statutes § 501-52 (2006). See also Waterhouse v. Capital Inv. Co., 44 Haw. 235, 246, 353 P.2d 1007, 1015 (1960) (stating that the land court had jurisdiction to pass upon plaintiff's claim in equity).

3.
The TRO and the injunction issued in Case 2 did not violate Ellis's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
The land court based its decision to grant the TRO and the injunction after reviewing the pleadings and records submitted by both parties. After such review, the land court found that Ellis's "alleged interest in the subject property [was] nonexistent"; Ellis was "now legally a stranger, and a stranger has no standing to file a [NOPA] and then petition [the land court] to permit that to be recorded"; and "Ellis's tactics of filing eleven [NOPAs] are both deplorable and abusive." The land court further explained to Ellis that "the Court is not prohibiting you from filing any [NOPAs] but you must first obtain leave of the Court." The land court's TRO and the injunction were thus narrowly tailored to prohibit Ellis from filing NOPAs without leave of court and did not violate the First Amendment or the Due Process clauses of the Constitution.

4.
Contrary to Ellis's argument, the land court did not abuse its discretion in issuing either the TRO or the injunction. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992),
First, the KRS entities had standing to seek injunctive relief because they are owners of the property or portions of the property. Ellis's efforts to delay and disrupt the KRS entities' development and sale of the property despite having no interest in the property certainly warranted injunctive relief.
Second, the injunction was not barred by res judicata because issuance of the injunction did not involve "relitigating a previously adjudicated claim or cause of action," and there was no "final judgment on the merits" which would preclude the injunction. Smallwood v. City and County of Honolulu, 118 Hawai'i 139, 146-47, 185 P.3d 887, 894-95 (App. 2008). To the extent that Ellis is arguing that the TRO was a "final judgment on the merits" that barred entry of the injunction, he is wrong since the TRO, on its face, stated that it "remain[ed] in effect pending a hearing on an order to show cause why a preliminary injunction should not be issued."

5.
The land court did not err in awarding costs to the KRS entities. HRCP Rule 54(d)(1) provides, in relevant part:
Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; .... Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.
First, Ellis's motion to disallow costs was untimely filed. The clerk's taxation of costs was entered January 3, 2007; however, Ellis did not file his motions to disallow costs in Cases 1 and 2 until January 16, 2007.
Moreover, "HRCP Rule 54(d) creates a strong presumption that the prevailing party will recover costs. The presumption that the prevailing party is entitled to costs must be overcome by some showing that an award would be inequitable under the circumstances. The losing party bears the burden of making this showing." Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 19, 143 P.3d 1205, 1221 (2006) (quoting Wong v. Takeuchi, 88 Hawai'i 46, 52, 961 P.2d 611, 617 (1998)) (internal quotation marks and ellipses omitted). In his motion, Ellis did not state that any costs were improperly taxed by the clerk; he merely argued that he should not be taxed any costs because he is indigent. Ellis did not provide any documentation to support this claim, and the land court acted within its discretion in taxing costs against Ellis.

D.
The final judgment entered by the circuit court on May 5, 2008 is affirmed.
NOTES
[1] The Honorable Gary W. B. Chang presided over all of the land court proceedings in the two cases on appeal.
[2] The three others who were cited with the order to show cause were Central Pacific Bank, Kula-Olinda Associates (Kula-Olinda), and Walter R. Schoettle. The order to show cause provided that failure to appear at the stated time and place would be regarded as a confession of the averments contained in the petition and constitute a bar from contesting the petition or any order, decree, or writ entered pursuant thereto. It does not appear from the record that Central Pacific Bank or Walter R. Schoettle were ever served with the petition and order to show cause. However, on January 17, 2003, Kula-Olinda filed a disclaimer of any interest in the property, signed by Ellis, which stated that Kula-Olinda did not object to the amendment of land court certificate of title No. 619, 934 in the manner petitioned by Ellis.